IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE P. YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:18-CV-109 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Defendant. | § | |

# ORDER

The Court is in receipt of Defendant's Motion for Summary Judgment, Dkt. No. 33; Plaintiff's Response to the Motion, Dkt. No. 34; the Magistrate Judge's Memorandum and Recommendation ("M&R"), Dkt. No. 35; and Plaintiff's Objections to the M&R, Dkt. No. 37.

After independently reviewing the filings, the record, and applicable law, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the M&R, Dkt. No. 35. Accordingly, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion for Summary Judgment, Dkt. No. 33.

## I. Background

The Court adopts Magistrate Judge Jason B. Libby's description of the procedural background:

> Plaintiff is a prisoner at the McConnell Unit of the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ). Plaintiff was convicted in Tarrant County of murder with a deadly weapon and sentenced on May 22, 1998 to life imprisonment. He was subsequently convicted in Van Zandt County of burglary of a habitation and sentenced on October 6, 1998 to ten years in prison. Plaintiff's allegations arise in connection with his current assignment to the McConnell Unit.
>
> Plaintiff sued the following defendants in their individual and official capacities: (1) Assistant Warden Corey Furr; (2) Veronica Inmon, member of the Unit Classification Committee (UCC); and (3) Warden Sifuentes.

> Plaintiff, a practitioner of the Jewish faith, alleges he was denied the right to wear a religious beard after being classified as a security risk. Plaintiff alleges, however, that his security classification was based on a false charge that he attempted to escape from prison in 1999. Plaintiff asserts violations of his right to practice his faith under the RLUIPA [Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*] as well as the First Amendment. He seeks injunctive relief in the form of being allowed to grow a religious beard.
>
> A *Spears* hearing was conducted on May 23, 2018. On June 4, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that the Court: (1) retain Plaintiff's First Amendment claim against Warden Sifuentes in his official capacity for injunctive relief; (2) dismiss all remaining claims against the remaining Defendants for failure to state a claim and/or as frivolous. (D.E. 9). The undersigned ordered service of Plaintiff's complaint on Warden Sifuentes. (D.E. 10). Senior United States District Judge Hilda G. Tagle subsequently adopted the M&R. (D.E. 14).
>
> On July 19, 2018, Warden Sifuentes filed a Motion to Dismiss, contending in part that he "lack[ed] the authority to change or make exceptions to TDCJ's security and religious policies that would allow [Plaintiff] to wear a religious beard." (D.E. 12, p. 3). During a telephone hearing conducted on October 11, 2018, counsel for Warden Sifuentes acknowledged that Director Lorie Davis is the proper party capable of granting the injunctive relief requested by Plaintiff in this case. The parties then agreed to the substitution of Director Davis in place of Warden Sifuentes as the proper defendant in this case. In two Orders entered on October 11, 2018, the undersigned substituted Director Davis for Warden Sifuentes and denied Warden Sifuentes's Motion to Dismiss as moot. (D.E. 20, 21).
>
> After being served with the complaint, Director Davis filed her answer on November 26, 2018. (D.E. 23). On May 28, 2019, Director Davis filed a Motion for Summary Judgment. (D.E. 33). Plaintiff subsequently filed his response. (D.E. 34).

Dkt. No. 35 at 2–3. On October 22, 2019, Magistrate Judge Libby published the M&R, recommending that the Court grant summary judgment for Defendant and dismiss the case. Dkt. No. 35. On November 18, 2019, Plaintiff filed objections to the M&R. Dkt. No. 37.

## II. Summary Judgment Standard

"[A] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and mandates the entry of summary judgment for the moving party." *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)) (internal quotation marks omitted).

The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *see* FED. R. CIV. P. 56(c). "If the burden lies with the nonmoving party, the movant may either (1) submit evidence negating the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports the essential element or claim." *Pena v. Home Depot U.S.A., Inc.*, 32 F. Supp. 3d 792, 796 (S.D. Tex. 2013) (citing *Celotex*, 447 U.S. at 330).

The Court must view all evidence in the light most favorable to the non-moving party. *Piazza's Seafood World*, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "When assessing whether a dispute to any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex*, 477 U.S. at 325). The non-movant may not merely rely on conclusory allegations or the pleadings. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). The non-movant's burden is not satisfied by "conclusory allegations," "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted).

### III. Undisputed Facts[1]

#### a. Plaintiff's Attempts to Wear Religious Beard

Plaintiff arrived at the McConnell Unit in August 2003. He has been actively practicing the Jewish faith since 2005 and has designated the Jewish faith with the TDCJ as his religious preference. He has been seeking to wear a religious beard since 2014 when the TDCJ changed its policy to allow inmates with sincere religious beliefs to wear a beard to a certain length. According to Plaintiff, his faith requires him to grow a religious beard. *See* Dkt. No. 35 at 4–5.

Before arriving at the McConnell Unit, Plaintiff was housed in the Allred Unit. In September 1999, Plaintiff was charged with possession of tobacco products and possession of contraband materials that could aid him in an escape attempt. Dkt. No. 26-1. In a hearing conducted on September 21, 1999, a disciplinary hearing officer found Plaintiff guilty of both charges. *Id.* at 5. Due to the incident, Plaintiff's classification record contains an "EA" code ("Escape Attempt"). Dkt. No. 33-1 at 3.

In 2014, Plaintiff filed an Inmate Request to an Official ("I-60") to wear a religious beard, which was later denied due to the EA code on his record. Dkt. No. 1-

---

[1] Plaintiff's verified complaint and testimony at his *Spears* hearing, to the extent that such pleadings comport with the requirements of Federal Rule of Civil Procedure 56(c), serve as competent summary judgment evidence. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-CV-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017). Pleadings that were not made on personal knowledge or that would be inadmissible in evidence will not be considered by the Court. *See* FED. R. CIV. P. 56(c)(4).

1 at 3. In a Step 1 Grievance, dated December 15, 2017, Plaintiff complained about being denied a religious beard and disputed his EA code which caused him to receive a "security precaution" designation. *Id*. His Step 1 Grievance was denied on January 24, 2018, concluding the "security precaution designator" was correct and that, pursuant to agency policy, he was ineligible to grow a religious beard. *Id*. at 4.

In a Step 2 Grievance, dated January 28, 2018, Plaintiff complained again about the EA designation. *Id*. at 1. He asserted that he was improperly denied a religious beard, as he never had a history of escape or attempted escape. *Id*. His Step 2 Grievance was denied, concluding that those with "security precaution designator for escape and/or attempted escape . . . are not allowed to grow a religious beard." *Id*. at 2.

### b. Relevant TDCJ Policies

The TDCJ Security Memorandum 6.16 ("SM-6.16"), dated December 1, 2017, sets forth the "grooming standards for offenders and ensures compliance for reasons related to security, safety, and sanitation." Dkt. No. 26-2 at 3. "The only exceptions are due to a medically documented issue[]." *Id*. SM-6.16 specifies that "[r]eligious beards shall be no more than fist length and not exceed four inches outward from the face." *Id*. at 4. "Offenders with a security precaution designator for escape and/or attempted escape in accordance with AD-4.11, 'Security Precaution Designators,' are not allowed to grow a religious beard." *Id*. at 5.

The TDCJ Unit Classification Procedure 6.03 ("UCP-6.03"), dated March 2018, provides that offenders with "any ES, EA or EZ codes" in their records have security precaution designators for escape. Dkt. No. 26-3 at 3. "An offender will be denied [religious beard approval] if he has a history of escape." *Id*.

The TDCJ Administrative Directive 4.11 (AD-4.11) defines "Escape Attempt (EA)" as "a code used to document attempted escapes," which "shall be used for offenders who have attempted escape from a secure adult correctional facility when the attempted escape does not meet the definition of the Escape Precaution Designator." Dkt. No. 25-1 at 4.

Further, TDCJ has procedures for maintaining photo identification of inmates with religious beards. Under SM-6.16, a "designated staff member shall ensure the appropriate photos are taken of offenders who request to grow a religious beard." Specifically, "[a]pproximately 30 days after the offender is approved to grow a religious beard, the bearded offender will be scheduled to take a photo and a new offender identification (ID) card will be issued. The designated staff member shall disseminate new ID cards issued as the result of a religious beard request." Dkt. No. 26-2 at 5–6.

Under UCP-6.03, designated staff must adhere to the following procedures:
- "Take a front view and profile photo of the offender with a digital still camera according to specifications provided in UCP 6.01, Updating Offender Photographs."
- "Use the FTP system to send the photos to the designated intake facility. The same day the photos are uploaded, fax the required photo capture log noted as 'Religious Beard Photo Capture Log' (attachment A) to the respective unit listed below. . . ."
- "Photo/ID staff will make a new transport card and ID card showing the beard photo and return it back to the unit for handling."
- "The transport card should be filed in the records and the old transport card returned to the regional beard photo/ID contact person. If the offender has a travel card, the mugshot should be attached."
- "The ID card should be issued to the offender. Existing cards should be destroyed or returned to Commissary & Trust."
- "As with all others, offenders with a religious beard will have their 3 year photo update taken according to infopac report INDCR01, Offender Photo Older than 3 Years. This photo will be taken with the religious beard and sent for upload through established practices. The offender will receive a new transport card with the updated photo. He will not receive a new ID card."

Dkt. No. 26-3 at 4. If an inmate no longer wishes to wear a religious beard, he must notify TDCJ by submitting an I-60 request, and a new photo will be taken of him without the beard. *Id*. at 5.

IV. **RLUIPA**
   a. **Legal Standard**

   Section 3 of the RLUIPA, which concerns institutionalized persons, states:

   > No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
   > (1) is in furtherance of a compelling governmental interest; and
   > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" is broadly defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id*. § 2000cc-5(7)(A).

The RLUIPA, which provides a private cause of action, *id*. § 2000cc-2(a), implements a burden-shifting framework. *Ali v. Stephens*, 822 F.3d 776, 782 (5th Cir. 2016). The plaintiff's initial burden is two-fold: he or she must show that (1) the relevant religious exercise is "grounded in a sincerely held religious belief," and (2) the government's action or policy "substantially burden[s] that exercise" by, for example, forcing the plaintiff to "engage in conduct that seriously violates [his or her] religious beliefs." *Id*. at 782–83 (citing *Holt v. Hobbs*, 135 S. Ct. 2751, 2775 (2016)). If the plaintiff carries this burden, the government then bears the burden of proof to show that its action or policy is the least restrictive means of furthering a compelling government interest. *Id*.

Congress enacted the RLUIPA to address "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, but expected court entertaining RLUIPA challenges to also "accord 'due deference to the experience and expertise of prison and jail administrators.'" *Cutter v. Wilkinson*, 544 U.S. 709,

716–17 (2005) (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on the RLUIPA)). "Religious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials 'in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Davis v. Davis*, 826 F.3d 258, 264–65 (5th Cir. 2016) (citing *Cutter*, 544 U.S. at 723)). "Costs, limited resources, and prisoner security are all compelling state interests." *Id*. "However, deference is not unlimited and policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements." *Id*. (internal quotation marks and citations omitted).

The least-restrictive-means standard is "exceptionally demanding, and requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864. The government's burden "is not to show that it considered the claimant's proposed alternatives but rather to demonstrate those alternatives are ineffective." *Ali*, 822 F.3d at 786.

The Government must also "demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 135 S. Ct. at 863 (citations omitted). Courts must "scrutinize the asserted harm of granting specific exemptions to particular religious claimants and to look to the marginal interest in enforcing the challenged governmental action in that particular context." *Id*. (internal quotation marks and citations omitted).

### b. Legal Analysis

Defendant argues that its ban on religious beards for inmates with escape or EA designations on their records, such as Plaintiff, is the least restrictive means of furthering the interests of inmate identification and security. Dkt. No. 33 at 4. Plaintiff asserts that his wearing of a religious beard does not pose a security risk

because (1) he never attempted to escape from prison in 1999, Dkt. No. 34 at 2, and (2) TDCJ's current policy requires inmates to have an ID consisting of one photograph with a beard and one photograph without a beard, *id.*; that is, SM-6.16 requires an offender to take a new photo thirty days after approval to grow a beard so that a new ID can be issued. Presumably, TDCJ retains the old photograph showing the offender without his religious beard, and both new and old photographs can be used to identify an escaped offender. Dkt. No. 26-2 at 6.

### i. *Plaintiff's Escape Attempt*

As a threshold matter, the Court addresses the issue of Plaintiff's escape attempt. Defendant submits the Emergency Action Report issued on September 9, 1999, which states that based on information provided by a confidential informant, Plaintiff was planning an escape from the Allred Unit. Dkt. No. 26-1 at 4. On September 9, 1999, during a search of Plaintiff's property, he had in his possession five maps—two maps of the Allred Unit, two maps of the State of Texas, and one map of Wichita Falls, Texas—and three hand-rolled cigarettes. *Id*. Defendant also submits the Disciplinary Report and Hearing Record posted on September 22, 1999, which states that a disciplinary hearing was held on September 21, 1999, in which Plaintiff admitted guilt for possession of tobacco products but denied he "had any intentions of escaping." *Id.* at 5. In response, Plaintiff submits an affidavit in which he denies attempting escape and declares that the maps were used for other purposes. *See* Dkt. Nos. 34 & 37. However, Plaintiff does not sufficiently come forward with specific facts that raise a genuine dispute as to TDCJ's finding that he was attempting to escape the Allred Unit. Accordingly, the Court concludes that Defendant properly designated Plaintiff with an EA code.

### ii. *Whether Policy is the Least Restrictive Means for Furthering Compelling State Interests*

The Court next addresses Defendant's policy on religious beards. Because Defendant does not challenge the sincerity of Plaintiff's religious beliefs and whether its action in denying him a religious beard substantially burdens his exercise of religion, the burden of proof switches to Defendant to demonstrate that

its challenged policy is the least restrictive manner of furthering its compelling interests of inmate identification and security. *See Ali*, 822 F3d at 782–83.

In support of its Motion for Summary Judgment, Defendant submits the Affidavit of Debra Gibbs, the Assistant Director of TDCJ's Classification and Records Department, who declares that the policy is well-justified for the following reasons: (1) Plaintiff presents an increased security risk due to his 1999 escape attempt and convictions of murder and burglary in 1998; (2) the policy assists in the identification and elevated monitoring of inmates, especially those with scars, tattoos, or birthmarks; and (3) if escape-risk offenders were allowed to grow a religious beard and were to successfully escape, they would quickly change their appearance by shaving their facial hair. Dkt. No. 33 at 5; Dkt. No. 33-1.

In response to Defendant's first reason, Plaintiff states that the policy is underinclusive because while inmates with EA codes who fall under the religious exemption cannot wear beards, inmates with EA codes who have medically documented issues are allowed to do so. *See* Dkt. No. 26-2 at 3. Here, Plaintiff raises a genuine dispute of material fact as to whether he poses an increased security risk, as inmates with similar escape designations (inmates with EA codes who have medical conditions) are permitted to grow beards. *See Ali*, 822 F.3d at 785 (citing *Williams-Yuliee v. Fla. Bar*, 575 U.S. 433, 449 (2015) ("Underinclusiveness can also reveal that a law does not actually advance a compelling interest.") and *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 795–96 (5th Cir. 2012) (holding that prison system's justification for denying inmate's requested privilege is "dampened" where it affords other inmates a similar privilege)).

Further, a genuine dispute of material fact exists as to whether Defendant's policy is the least restrictive means of advancing the interest of inmate identification and monitoring. Defendant asserts that the ban "allows for correctional officers to ensure that offenders do not enter areas of the prison where they do not belong" and to prevent them from masking "significant identifying marks, such as scars, tattoos, or birthmarks." Dkt. No. 33-1 at 3. When examining the validity of a prison's grooming policy, quick and reliable identification of

prisoners may serve as a sufficiently compelling interest. *Holt*, 135 S. Ct. at 864–65. However, Defendant's policy requires the following: a prisoner's photo must be taken thirty days after approval to grow a beard so that a new ID card can be issued; when an offender no longer wishes to grow a religious beard, a new ID card with a clean-shaven photo is issued; and photos are updated at least every three years. *Id*. Dkt. No. 26-2 at 6. Thus, presumably, an inmate wears an ID card that aligns with his current clean-shaven or bearded appearance, which mitigates Defendant's concern that correctional officers will face difficulty in identifying inmates. *See Holt*, 135 S. Ct. at 865 (noting prisons "could largely solve this problem [of inmates confusing guards by shaving or growing their beards] by requiring that all inmates be photographed without beards when first admitted to the facility and, if necessary, periodically thereafter"). Accordingly, it is factually disputed as to whether banning religious beards for inmates with EA designations is the least restrictive means of achieving the interest of inmate identification and monitoring.

Lastly, it is also factually disputed that Defendant's policy is the least restrictive means of furthering the interest of identifying inmates once they escape. Defendant asserts that inmates with beards who escape from a facility can quickly shave to avoid identification by law enforcement officers or the public. However, as noted in *Holt*, a dual-photograph method that preserves both the clean-shaven and bearded photographs "might help authorities apprehend a bearded prisoner who escapes and then shaves his beard once outside the prison." *Holt*, 135 S. Ct. at 865; *see also Sims v. Inch*, 400 F. Supp. 3d 1272, 1279 (N.D. Fla.) (noting an "easy solution" to identify escaped inmates is "to retain a clean-shaven photograph," and that "in any event, modern technology allows easy manipulation of photographs to show a subject with or without a beard"). Accordingly, a genuine issue of material fact exists as to whether Defendant's ban is less restrictive than the dual-photograph method in furthering the interest of identifying escaped inmates.

Because genuine issues of material fact exist as to whether Defendant's policy is the least restrictive means of furthering compelling governmental

interests, the Court declines to grant summary judgment on Plaintiff's claim under the RLUIPA.

V.  **First Amendment**

The First Amendment provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const., amend I. While prisoners retain their First Amendment rights, including the right to free exercise of religion, they only retain those First Amendment rights which "are not consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 427 U.S. 817, 822 (1974). Thus, a prisoner's right to practice his religion may be limited where the prison officials establish that there is a legitimate penological objective. *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In evaluating the reasonableness of a prison regulation, four factors are considered: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation . . . will have on guards and other inmates, and on the allocation of prison resources generally," (4) whether there are "ready alternatives that could fully accommodate[] the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 89–91 (internal citations and quotation marks omitted). While *Turner*'s standard encompasses four factors, the Fifth Circuit has noted that "rationality is the controlling factor, and a court need not weigh each factor equally." *Mayfield v. Tex. Dep't Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008) (citation omitted).

The First Amendment provides less protection than the RLUIPA. *Holt*, 135 S. Ct. at 867. The Fifth Circuit has consistently rejected prisoners' First Amendment claims against a prison's grooming policy, concluding that such grooming policies are rationally related to legitimate penological interests of identification and safety. *See Green v. Polunsky*, 229 F.3d 486 (5th Cir. 2000) (rejecting First Amendment claim against TDCJ's ban on long hair and beards); *see also Taylor v. Johnson*, 257 F.3d 470 (5th Cir. 2001) (affirming dismissal of First Amendment claim against TDCJ's ban of religious beards); *Ali v. Quarterman*, 434 F. App'x 322 (5th Cir. 2011) (same). Accordingly, the Court grants Defendants their Motion for Summary Judgment on the First Amendment claim.

## VI. Conclusion

For the reasons above, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the M&R, Dkt. No. 35. Accordingly, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion for Summary Judgment, Dkt. No. 33. Summary judgment is **DENIED** on the RLUIPA claim and **GRANTED** on the First Amendment claim.

SIGNED this 9th day of March, 2020.

_____
Hilda Tagle
Senior United States District Judge